UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

LINDA M. CARACO,

               Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.
_____

**DECISION AND ORDER**

1:18-CV-00908 EAW

## INTRODUCTION

Represented by counsel, plaintiff Linda M. Caraco ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act") seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 13; Dkt. 17), and Plaintiff's reply (Dkt. 20). For the reasons discussed below, the Commissioner's motion (Dkt. 17) is denied, Plaintiff's motion (Dkt. 13) is granted in part, and this matter is remanded for further administrative proceedings.

## BACKGROUND

Plaintiff protectively filed her application for DIB on May 7, 2014. (Dkt. 5 at 15, 93).[1] In her application, Plaintiff alleged disability beginning October 12, 2013, due to migraines, degenerative disc disease, anemia, insomnia, spinal stenosis, depression, and anxiety. (*Id.* at 193, 196). Plaintiff's application was initially denied on September 10, 2014. (*Id.* at 94-104). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Lynette Gohr in Buffalo, New York, on October 12, 2016, and January 19, 2017. (*Id.* at 34-81, 108-10). On March 17, 2017, the ALJ issued an unfavorable decision. (*Id.* at 12-29). Plaintiff requested Appeals Council review; her request was denied on June 14, 2018, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-11). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id.* § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id.* § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on December 13, 2015. (Dkt.

5 at 17). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity from October 12, 2013, the alleged onset date, through December 31, 2015, the date last insured. (*Id.*).

At step two, the ALJ found that through the date last insured Plaintiff suffered from the following severe impairments: cervical spine degenerative disc disease; spondylosis; and vascular/migraine headaches. (*Id.*). The ALJ further found that Plaintiff's medically determinable impairments of anxiety and depression were non-severe. (*Id.* at 17-18).

At step three, the ALJ found that through the date last insured Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 18). The ALJ particularly considered the requirements of Listing 1.04 in reaching this conclusion. (*Id.*).

Before proceeding to step four, the ALJ determined that through the date last insured Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except that Plaintiff:

> [C]an frequently push and pull; can never work at unprotected heights or around dangerous machinery; can never climb ladders, ropes or scaffolds; [and] cannot operate a motor vehicle as part of her job duties.

(*Id.*). At step four, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that through the date last insured Plaintiff was capable of performing her past relevant work as a medical secretary. (*Id.* at 21). In the alternative, at step five, the ALJ relied on the VE's testimony to conclude that through the date last insured, considering Plaintiff's age, education, work experience, and RFC, Plaintiff was capable of performing jobs that existed in significant numbers in the national economy, including the

representative occupations of folder, cleaner, and packer. (*Id.* at 22). Accordingly, the ALJ found Plaintiff was not disabled as defined in the Act at any time from the alleged onset date through the date last insured. (*Id.* at 23).

## II. Remand of this Matter for Further Proceedings is Required

Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner. Plaintiff argues the ALJ erred by: (1) improperly relying on the opinion of consultative examiner Dr. David Brauer and failing to appropriately develop the record; and (2) failing to include any limitations related to Plaintiff's migraine headaches and lumbar spine injury in the RFC finding. (Dkt. 13-1 at 17-22). For the reasons discussed below, the Court concludes remand is necessary because Dr. Brauer's opinion does not constitute substantial evidence for the ALJ's conclusions and no other physician provided an assessment of Plaintiff's physical limitations.

### A. Dr. Brauer's Opinion does not Relate to the Relevant Time Frame and Further Development of the Record was Necessary

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." *Id.* However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted). In other words:

> An ALJ is prohibited from "playing doctor" in the sense that "an ALJ may not substitute his own judgment for competent medical opinion." This rule is most often employed in the context of the RFC determination when the

- 6 -

claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion in the RFC.

*Quinto v. Berryhill*, No. 3:17-cv-00024, 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (citations omitted). "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted).

In this case, the record contained the following assessments of Plaintiff's physical limitations: (1) three determinations by treating physician Dr. Eugene Gosy that Plaintiff had a "75% disability status"; and (2) Dr. Brauer's consultative assessment. (*See* Dkt. 5 at 21). The ALJ properly afforded "little weight" to Dr. Gosy's assessments on the basis that they were nonspecific and conclusory. (*Id.*).

The ALJ further gave great weight to Dr. Brauer's opinion, finding that it was "consistent with the medical evidence of record." (*Id.*). Plaintiff argues that this was error, because Dr. Brauer's opinion was based on his one-time examination of Plaintiff on November 7, 2016, nearly a year after her date last insured, and therefore was not probative of her condition during the relevant time frame. The Court agrees.

A claimant "cannot qualify . . . for DIB unless [she] was disabled prior to [her] date last insured." *Camacho v. Astrue*, No. 08-CV-6425, 2010 WL 114539, at *4 (W.D.N.Y. Jan. 7, 2010). "Medical opinions given after the date that [plaintiff's] insured status expired

are taken into consideration if such opinions are relevant to [plaintiff's] condition prior to that date." *Dailey v. Barnhart*, 277 F. Supp. 2d 226, 233 n.14 (W.D.N.Y. 2003); *see also Shook v. Comm'r of Soc. Sec.*, No. 12-CV-185 TJM/VEB, 2013 WL 1213123, at *6 (N.D.N.Y. Jan. 25, 2013) ("[E]vidence cannot be disregard solely because it post-dates the relevant time period. Rather, information provided after the date last insured should be considered to the extent it sheds light on the Plaintiff's condition as of the relevant time period."), *report and recommendation adopted*, 2013 WL 1222008 (N.D.N.Y. Mar. 25, 2013). In determining the probative value of medical opinions from outside the relevant time period, the key factor is whether the opinion is retrospective or, on the other hand, provides only a snapshot of the plaintiff's functioning on the date it was rendered. *See Smith v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 270, 285 (W.D.N.Y. 2018).

Here, there is no indication that Dr. Brauer's opinion was meant to be retrospective. To the contrary, Dr. Brauer examined Plaintiff only once, he does not appear to have reviewed Plaintiff's medical records, and he expressly stated that his assessment of her functional limitations was based on that single examination. (Dkt. 5 at 507). Indeed, "[t]he Commissioner does not dispute Plaintiff's position that Dr. Bauer's [sic] opinion was not retrospective." (Dkt. 17-1 at 10). There is also evidence in the record suggesting that Plaintiff's condition may have changed after the date last insured. In particular, after her date last insured, Plaintiff underwent a course of chiropractic treatment that successfully reduced her pain. (*See* Dkt. 5 at 539). Further, the ALJ failed, in assessing Dr. Brauer's opinion, to acknowledge that it was generated outside the relevant time frame and that it was not retrospective. On these facts, the Court finds that Dr. Brauer's opinion did not

constitute substantial evidence for the ALJ's conclusions regarding Plaintiff's limitations during the relevant time period. *See Patterson v. Comm'r of Soc. Sec.*, No. 1:18-CV-0556 (WBC), 2019 WL 4573752, at *5 (W.D.N.Y. Sept. 20, 2019) ("A medical opinion rendered well after a plaintiff's date last insured may be of little, or no, probative value regarding plaintiff's condition during the relevant time period." (collecting cases)).

The Court further finds that the ALJ's appropriate rejection of Dr. Gosy's conclusory opinions and the lack of any other medical opinion regarding Plaintiff's functioning during the relevant time period created a gap in the evidentiary record that the ALJ was required to fill. "Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). Specifically, the ALJ must "investigate and develop the facts and develop the arguments both for and against the granting of benefits." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011). Here, as previously discussed, "the record contained no competent medical opinion regarding Plaintiff's RFC during the relevant time period." *Covey v. Colvin*, 204 F. Supp. 3d 497, 507 (W.D.N.Y. 2016) (remanding for further administrative proceedings where "the only two medical opinions in the record were Dr. Pataki's opinion, which reached no conclusion regarding Plaintiff's physical capabilities, and Dr. Mafi's opinion, which the ALJ properly found was not material to the relevant time period"); *see also Gipps v. Berryhill*, No. 1:17-CV-01171 (HBF), 2019 WL 1986518, at *6 (W.D.N.Y. May 6, 2019) (remanding for further proceedings because "[d]uring the relevant period under review, there is no opinion of record by a treating physician or other medical provider that plaintiff

was able to work and/or was ready to return to work or was capable of doing light work with the limitations found by the ALJ").

The Court is also not persuaded this is a case "where the medical evidence shows relatively little physical impairment," such that the ALJ could permissibly "render a common sense judgment about functional capacity even without a physician's assessment." *Skupien v. Colvin*, No. 13-CV-403S, 2014 WL 3533425, at *4 (W.D.N.Y. July 16, 2014) (quotation omitted). As the ALJ noted, Plaintiff suffers from moderate degenerative disc disease, as well as "severe neural foramina stenosis on the right" and "broad-based posterior disc protrusion." (Dkt. 5 at 14). Plaintiff's pain was sufficiently severe that she was treated with a TENS unit and both epidural and nerve block injections. (*Id.* at 14-15). This is not the kind of minor physical impairment that courts have found an ALJ qualified to assess based on common sense.

On these facts, the ALJ had a duty to develop the record and to seek a physician's assessment of Plaintiff's functional limitations during the relevant time period (that is, between October 12, 2013, and December 31, 2015). As this Court has found in a similar case:

> There were many avenues available to the ALJ to fill the gap in the record: [she] could have requested addition information from the treating physician . . .; [she]could have obtained . . . [a retrospective opinion based on a] consultative examination; and/or [she] could have requested an opinion from a medical expert. On remand, the Commissioner should employ whichever of these methods are appropriate to fully develop the record with respect to Plaintiff's RFC.

*Covey*, 204 F. Supp. 3d at 507 (citation omitted).

B. <u>Plaintiff's Remaining Argument</u>

As set forth above, Plaintiff also argues the ALJ erred by failing to incorporate limitations related to her headaches and lumbar spine injury in the RFC finding. However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach this issue. *See, e.g., Insalaco v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 401, 410 (W.D.N.Y. 2019) (declining to reach additional arguments where the court had determined remand for further administrative proceedings was necessary); *Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach remaining arguments where the court had already determined remand was warranted).

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 17) is denied, Plaintiff's motion for judgment on the pleadings (Dkt. 13) is granted in part, and the matter is remanded for further administrative proceedings consistent with this Decision and Order.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: January 24, 2020
Rochester, New York